## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRUCE X. COOPER,

        Plaintiff,

    v.

SCOTT PRINCE, *et al.*,

        Defendants.

No. 4:24-CV-00487

(Chief Judge Brann)

## MEMORANDUM OPINION

### OCTOBER 21, 2024

Plaintiff Bruce X. Cooper is a serial *pro se* litigant who was previously confined at the State Correctional Institution in Dallas, Pennsylvania (SCI Dallas). He filed the instant *pro se* Section 1983[1] action, alleging that two medical providers at SCI Dallas were deliberately indifferent to his serious medical needs. Presently pending is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion.

## I.    BACKGROUND

Cooper is currently incarcerated at SCI Benner Township,[2] but the incidents that underlie the instant complaint allegedly occurred while he was housed at SCI

---

[1]  42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]  *See* Doc. 10 ¶ 3.

Dallas.  Cooper initially filed this lawsuit in the Court of Common Pleas of Luzerne County, Pennsylvania, in December 2023.[3]  Defendants—Dr. Scott Prince and Mark Abel, PA-C—promptly removed the case to this Court in March 2024 after they were served.[4]

Cooper's Section 1983 action concerns the medical care he received at SCI Dallas from April to June 2023.[5]  Cooper alleges that he is prescribed Lovenox injections twice daily for chronic anticoagulation.[6]  He thus avers that he "goes to medical twice each day."[7]  According to Cooper, in May 2023, he began to suffer from "extreme difficulties walking and breathing," as well as "hard dark stool," and he avers that he informed Dr. Prince and Abel of these symptoms.[8]  He claims that Dr. Prince diagnosed him with Chronic Obstructive Pulmonary Disease (COPD) and prescribed "a third inhaler" and a stool softener for the complained-of conditions.[9]

Cooper's symptoms, however, did not resolve.  He recounts that, during May and June 2023, numerous corrections officers voiced their concern about his health and physical appearance, noting that he did not "look well" and that his face

---

[3]   *See generally* Doc. 1-2.
[4]   *See generally* Doc. 1.
[5]   *See* Doc. 1-2 at 5-8 ¶¶ 3-19; *id.* at 9-11 ¶¶ 1-15.
[6]   *Id.* at 5 ¶ 7; *id.* at 6 ¶ 10.
[7]   *Id.* at 6 ¶ 9.
[8]   *Id.* at 5 ¶ 4; *id.* at 9 ¶¶ 1, 5.
[9]   *Id.* at 5 ¶ 6; *id.* at 9 ¶¶ 5-6.

appeared "grey."[10]  He alleges that Dr. Prince and Abel failed to "order any kind of examination" like blood work (specifically, a complete blood count or "CBC"), and instead insisted that his symptoms were the result of COPD.[11]

Cooper asserts that on June 6, 2023, Dr. Prince and Abel—after examining him during a sick-call session—placed him in the infirmary overnight for observation.[12]  Cooper returned to his cell the following morning.[13]  Then, on June 10, when he went to medical to receive his morning Lovenox injection, he began experiencing acute symptoms including worsening fatigue, shortness of breath, and excessive sweating, and was sent to the infirmary by the desk officer who was stationed at the medical department.[14]  In the infirmary, Cooper was given oxygen and placed in a wheelchair, and then transferred emergently to Geisinger Hospital.[15]

Upon admission to Geisinger Hospital, Cooper alleges that he was diagnosed with "severe anemia" with a hemoglobin count of "2.6."[16]  He was admitted for in-patient care, given a blood transfusion, and remained hospitalized for three days.[17]  Cooper maintains that the anemia was the true cause of his symptoms in May and

---

[10]  *Id.* at 10 ¶ 8.
[11]  *Id.* at 5-6 ¶¶ 6, 9; *id.* at 10 ¶¶ 5-6.
[12]  *Id.* at 10 ¶ 9.
[13]  *Id.*
[14]  *Id.* ¶ 8.
[15]  *Id.*
[16]  *Id.* at 5 ¶ 3; *id.* at 10 ¶ 8.
[17]  *Id.* at 6 ¶ 8; *id.* at 10 ¶ 8.

June, and that if Dr. Prince and Abel would have performed "simple" blood testing or analyzed a stool sample, they would have discovered his low blood count and that he had blood in his stool, respectively.[18]  Instead, he alleges, Dr. Prince and Abel "refused to consider [his] ongoing physical problems as anything other than COPD[.]"[19]

Cooper sues Dr. Prince and Abel, alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[20] He seeks compensatory and punitive damages, as well as a declaration that his rights were violated.[21]

Defendants now move to dismiss Cooper's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[22]  That motion is fully briefed and ripe for disposition.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[23]  The court must accept as true the factual allegations in the complaint and draw all

---

[18]    *Id.* at 6 ¶ 10; *id.* at 11 ¶¶ 10, 14.
[19]    *Id.* at 6 ¶ 9.
[20]    *Id.* at 8 ¶ 21.
[21]    *Id.* ¶¶ 23-24.
[22]    *See generally* Doc. 9.
[23]    *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

reasonable inferences from them in the light most favorable to the plaintiff.[24]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[25]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[26]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[27]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[28]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[29]  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[30]

Because Cooper proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent

---

[24]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[25]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[26]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[27]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[28]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[29]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[30]  *Iqbal*, 556 U.S. at 681.

standards than formal pleadings drafted by lawyers[.]"[31]  This is particularly true

when the *pro se* litigant, like Cooper, is incarcerated.[32]

## III.    DISCUSSION

Defendants challenge the sufficiency of Cooper's Eighth Amendment

medical indifference claims, arguing that his allegations do not rise to the level of a

constitutional infringement.  The Court agrees that Cooper's complaint alleges—at

most—medical malpractice, not constitutional violations.

### A.    Eighth Amendment Medical Indifference Claim

In the context of prison medical care, the Eighth Amendment "requires

prison officials to provide basic medical treatment to those whom it has

incarcerated."[33]  To state an Eighth Amendment deliberate indifference claim

regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had

a serious medical need, (2) the defendants were deliberately indifferent to that

need; and (3) the deliberate indifference caused harm to the plaintiff."[34]  A serious

medical need is "one that has been diagnosed by a physician as requiring treatment

or one that is so obvious that a lay person would easily recognize the necessity for

a doctor's attention."[35]

---

[31]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

[32]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

[33]  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[34]  *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

[35]  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[36]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[37]  Claims sounding in mere medical negligence will not suffice.[38]

Cooper adequately states a serious medical need with respect to his severe anemia.  He does not, however, plausibly allege that Dr. Prince and Abel were deliberately indifferent to that need.

In his complaint, Cooper avers that he was making twice-daily trips to the medical department for his Lovenox injections.  He alleges that he was thus "seen by numerous medical staff, yet no medical staff including [Dr. Prince and Abel] took steps to further examine [him] for the conditions he was suffering from[.]"[39]  Cooper further asserts that although he "educated" Dr. Prince and Abel about his symptoms,[40] they refused to consider an alternate diagnosis besides COPD.

---

[36]  *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[37]  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[38]  *Rouse*, 182 F.3d at 197.
[39]  Doc. 1-2 at 6 ¶ 9.
[40]  *Id.* at 9 ¶ 1.

The primary problem with Cooper's pleading is that it lacks sufficient facts to plausibly allege the exceedingly high bar of deliberate indifference. Notably, Cooper does not allege when or how many times he saw Dr. Prince or Abel in their purported sequence of "recklessly persist[ing] on a particular course of treatment" for his symptoms.[41] Under even the most liberal construction, Cooper's complaint appears to allege that, during the relevant period, he was treated by Dr. Prince on two occasions: once when Dr. Prince prescribed the third inhaler for COPD and once when Dr. Prince admitted him on June 6 for overnight observation.[42] In no way could these sparse allegations implicate deliberate indifference to serious medical needs. As to Abel, it is impossible to know if or when he provided treatment to Cooper during the relevant times because there are no allegations specific to Abel in the complaint.[43]

Cooper's complaint, therefore, is woefully deficient as to plausibly alleging that either Dr. Prince or Abel was culpable of "unnecessary and wanton infliction of pain" in their treatment of him. While it is clear that Cooper believes that Dr.

---

[41] *Id.* at 9 ¶ 3.

[42] *See id.* at 9 ¶¶ 5-6; *id.* at 10 ¶ 9.

[43] This pleading deficiency raises another problem with Cooper's complaint as to defendant Abel: lack of personal involvement. It is well settled that a Section 1983 defendant must have personal involvement in the alleged unconstitutional conduct. *See Dooley*, 957 F.3d at 374 (citation omitted). Cooper continually lumps Dr. Prince and Abel together and contends that these Defendants simultaneously provided constitutionally deficient care, but such allegations are insufficient to plead personal involvement. It is simply implausible that Abel and Dr. Prince acted at all times in unison and undertook the exact same conduct with regard to providing medical care for Cooper at SCI Dallas.

Prince (and possibly Abel) misdiagnosed him, such an allegation implicates medical malpractice, not a constitutional violation.[44]  Indeed, nearly all of Cooper's allegations against Dr. Prince reflect his fervent belief that Dr. Prince's treatment fell below the appropriate medical standard of care.  This is especially true insofar as Cooper compares Dr. Prince's medical care with that which was provided by doctors at Geisinger Hospital.[45]  Yet such allegations unambiguously sound in medical malpractice, which is a state-law tort claim that should be brought in state court.

The Court observes that Cooper has provided extensive additional medical records and affidavits[46] to support his brief in opposition to Defendants' motion to dismiss.  But such documents are off limits at the Rule 12(b)(6) stage.  Unless those documents and averments are included as part of the complaint, the Court cannot consider them when ruling on Defendants' motion to dismiss.[47]  Furthermore, it is well settled that a plaintiff cannot amend his pleadings through a brief in opposition to a motion to dismiss.[48]

---

[44]  *See Estelle v. Gamble*, 429 U.S. 96, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

[45]  *See, e.g.*, Doc. 15 at 2 (noting that, within a few hours, Geisinger Hospital physicians completed "a simple blood test" that "determined the problems [Cooper] was complaining about for months").

[46]  *See generally* Docs. 14-1, 14-2, 15-1.

[47]  *See Mayer*, 605 F.3d at 230.

[48]  *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

In sum, Cooper's pleading falls far short of plausibly alleging deliberate indifference by either Defendant.  The Court, therefore, must dismiss Cooper's complaint for failure to state a claim upon which relief may be granted.

### B.    Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[49]  Cooper will be granted leave to amend in the event that he can plead additional facts that would plausibly state an Eighth Amendment medical indifference claim.

If Cooper chooses to file an amended complaint in federal court (rather than a medical malpractice action in state court), it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The amended complaint should set forth Cooper's Eighth Amendment medical indifference claims in short, concise, and plain statements, and in sequentially numbered paragraphs.  Cooper must leave one-inch margins on all four sides of his pleading.[50]  He must also cure the defects specifically noted in this Memorandum.

In particular, Cooper must *specify* the offending actions taken by a particular defendant.  This step is critical for Cooper, as his initial complaint is devoid of allegations that demonstrate at least one Defendant's (Abel's) personal

---

[49]   *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).
[50]   *See* LOCAL RULE OF COURT 5.1.

involvement in the purportedly deficient medical care.  Cooper is specifically admonished that his allegations should be contained <u>within his amended complaint</u> rather than in peripheral affidavits, and that if he desires to have medical records included as part of his pleading, he must attach those records to the amended complaint.

If Cooper does not timely file an amended complaint, dismissal of his complaint without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

## IV.  CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Leave to amend will be granted.  An appropriate Order follows.

BY THE COURT:

<u>s/ Matthew W. Brann</u>
Matthew W. Brann
Chief United States District Judge