# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRUCE X. COOPER,

       Plaintiff,

    v.

SCOTT PRINCE, *et al.*,

       Defendants.

No. 4:24-CV-00487

(Chief Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 26, 2025

Plaintiff Bruce X. Cooper is a serial *pro se* litigant who was previously confined at the State Correctional Institution in Dallas, Pennsylvania (SCI Dallas). He filed the instant *pro se* Section 1983[1] action, alleging that two medical providers at SCI Dallas were deliberately indifferent to his serious medical needs. The Court dismissed his initial complaint for failure to state an Eighth Amendment claim of medical deliberate indifference but granted leave to amend. Cooper then filed an amended complaint. Presently pending is Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion and dismiss Cooper's amended complaint with prejudice.

---

[1]  42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I.    BACKGROUND

Cooper is currently incarcerated at SCI Benner Township,[2] but the events that underlie the instant civil action allegedly occurred while he was imprisoned at SCI Dallas.  Cooper initially filed his lawsuit in December 2023 in the Court of Common Pleas of Luzerne County, Pennsylvania.[3]  Defendants—Dr. Scott Prince and Mark Abel, PA-C—promptly removed the case to this Court in March 2024 after they were served.[4]

Defendants then moved to dismiss Cooper's complaint,[5] arguing that he had failed to plausibly allege an Eighth Amendment claim of deliberate indifference to serious medical needs.  The Court granted that motion, finding that Cooper had failed to allege personal involvement by PA Abel and had failed to plausibly plead deliberate indifference by either PA Abel or Dr. Prince.[6]  The Court dismissed Cooper's complaint without prejudice and Cooper filed an amended complaint,[7] which is the operative pleading in this action.

Cooper's Section 1983 lawsuit primarily concerns the medical care he received at SCI Dallas from May to June 2023 by Dr. Prince and PA Abel.[8] Cooper first alleges that on March 2, 2023, during a sick-call visit, he informed

---

[2]    *See* Doc. 10 ¶ 3.
[3]    *See generally* Doc. 1-2.
[4]    *See generally* Doc. 1.
[5]    Doc. 9.
[6]    *See* Doc. 16 at 6-10 & n.43.
[7]    Doc. 18.
[8]    *See generally id.*

unspecified "medical staff" that he was experiencing shortness of breath at rest and with walking.[9]  According to the medical records attached to his amended complaint, CRNP Loretta DeBoer examined Cooper and reviewed his medical records, noting that a PET scan was scheduled for later that month as well an outside cardiothoracic surgery consult due to a "malignant neoplasm of the lung."[10] CRNP DeBoer informed Cooper that his breathing issues could be related to his Chronic Obstructive Pulmonary Disease (COPD) "and/or his lung tumor."[11]

Cooper was seen again by CRNP DeBoer on May 10, 2023, after complaining of shortness of breath.[12]  He asserted that he was using his Albuterol inhaler "2 puffs," which was prescribed twice daily, in the evening only, and stated that he "did not know that [he] could use it more than that."[13]  CRNP DeBoer provided Cooper with "education on [the] proper use of [the] Albuterol inhaler and Alvesco inhaler," and issued him a shower pass to shower on the same Block level as he was housed.[14]

On May 18, 2023, during another sick-call visit, Cooper again complained of breathing problems and shortness of breath.[15]  It appears that this is the first instance—as relevant to the instant lawsuit—where he interacted with and was

---

[9]   *Id.* ¶ 6.
[10]  *See* Doc. 18-1 at 1, 6, 7.
[11]  *Id.* at 1; Doc. 18 ¶ 6.
[12]  Doc. 18-1 at 26-27.
[13]  *Id.* at 26.
[14]  *Id.*
[15]  Doc. 18 ¶ 7, Doc. 18-1 at 2.

treated by PA Abel.[16]  PA Abel examined Cooper, measured his vitals and oxygen saturation (which was found to be 97%), noted that he was on three inhalers and had a history of COPD, and prescribed a "steroid dose pack" based on Cooper's complaints.[17]  Later in his amended complaint, Cooper asserts that on May 18 he also complained of "hard dark stool" and PA Abel prescribed "fiber-lax," a stool softener.[18]

Cooper was seen again on sick call by CRNP DeBoer on May 31, 2023.[19] He attached a "notice of liability" to his sick-call request, indicating that his breathing issues had "not gotten better," nor had he been seen by a specialist "of which Dr. Prince and sick call staf[f] are not."[20]  CRNP DeBoer advised Cooper that he was scheduled to see Dr. Miceli (an oncologist) via telemedicine on June 5, and that he had already been seen by outside specialist Dr. Lee (a cardiothoracic surgeon) on March 23, 2023, and April 3, 2023.[21]  Cooper was further informed that he had undergone a PET scan on March 16, 2023, as well as a biopsy on April 25, 2023, and that Dr. Miceli would review the biopsy results and determine any need for follow-up visits with specialists.[22]  Additionally, Cooper was advised that

---

[16]  *See* Doc. 18-1 at 2.
[17]  *Id.* at 2-3.
[18]  *See* Doc. 18 ¶ 17; Doc. 18-1 at 11.
[19]  Doc. 18 ¶ 11; Doc. 18-1 at 15.
[20]  Doc. 18-1 at 15.
[21]  *Id.* at 6-8, 15.
[22]  *Id.* at 15.

SCI Dallas "medical staff have ordered studies and consults as directed by [these] specialists."[23]

On June 4, 2023, Cooper was seen for shortness of breath and leg weakness during physical exertion.[24]  He was initially examined by RN Jacqueline Chackan, who notified Dr. Prince and subsequently received an order to have Cooper evaluated by PA Abel.[25]  RN Chackan directed Cooper to remain in the infirmary until he could be evaluated by PA Abel.[26]

Later the same day, Cooper was seen by PA Abel.[27]  Cooper's vital signs were normal and an ECG revealed a normal sinus rhythm.[28]  PA Abel noted that Cooper's lungs were clear, his abdomen was "soft and nontender," he had no edema or cyanosis in his extremities, and he had no "focal neurological deficits."[29]  Although Cooper alleges that Dr. Prince ordered him to be admitted to the infirmary for a 23-hour period for observation,[30] Cooper's medical records reflect that it was actually PA Abel who admitted him for 23-hour monitoring based on the diagnosis of shortness of breath.[31]  During this 23-hour admission to the

---

[23]  *Id.*
[24]  Doc. 18 ¶ 12; Doc. 18-1 at 16-17.
[25]  Doc. 18-1 at 17.
[26]  *Id.*
[27]  Doc. 18 ¶ 12; Doc. 18-1 at 18-19.
[28]  Doc. 18-1 at 19.
[29]  *Id.*
[30]  Doc. 18 ¶ 12.
[31]  Doc. 18-1 at 18.  This discrepancy is immaterial for the instant motion to dismiss.

infirmary, Cooper was monitored by nursing staff throughout the day and into the following day.[32]

The next day, June 5, Cooper was seen in the infirmary by Dr. Prince.[33]  Dr. Prince noted Cooper's complaint of shortness of breath (or "dyspnea"), observing that it increased with exertion and weather changes.[34]  He further noted that Cooper had "only been using Alvesco once daily," as well as Albuterol three to four times daily.[35]  Dr. Prince "reinforced" the use of Alvesco two times a day, and noted that he was considering changing Cooper to "one of the new triple therapy agents like Trelegy."[36]  Dr. Prince declined to refer Cooper to a pulmonologist at that time, noting that he was scheduled to see Dr. Miceli later that afternoon to review biopsy results.[37]

Later that day, Cooper told nursing staff that he was "fine" and "want[ed] to go back to the block."[38]  Dr. Prince discharged Cooper from the infirmary,[39] and Cooper ambulated to the block "without assistance or difficulty" and with no complaints of pain.[40]

---

[32]  *Id.* at 20-22.
[33]  Doc. 18 ¶ 13; Doc. 18-1 at 23-25.
[34]  Doc. 18-1 at 23.
[35]  *Id.*
[36]  *Id.* at 24.
[37]  *Id.*
[38]  *Id.* at 25.
[39]  Doc. 18 ¶ 13; Doc. 18-1 at 25.
[40]  Doc. 18-1 at 25.

On June 10, 2023, Cooper returned to the medical department, once again experiencing shortness of breath that worsened with walking and exertion.[41]  He informed medical provider Rita Missigman that he had "been dealing with worsening COPD symptoms that have been gradually getting worse since [M]ay."[42]  Missigman placed him on oxygen and promptly notified Dr. Prince, who was the on-call physician at that time.[43]

Approximately two hours later, Dr. Prince examined Cooper and noted that he was having worsening shortness of breath and was experiencing tachycardia.[44]  Dr. Prince activated "911" and ordered Cooper's transfer via ambulance to the emergency department at Geisinger Hospital.[45]  Dr. Prince administered 60mg of Prednisone and kept Cooper on oxygen until emergency personnel arrived.[46]

Cooper alleges that, while hospitalized at Geisinger Hospital, he was diagnosed with "severe anemia" with a hemoglobin count of "2.6" on admission.[47]  He claims that he received six to seven units of plasma as part of his treatment there.[48]  He was discharged on June 14, 2023.[49]

---

[41]  Doc. 18 ¶ 14 (Cooper's amended complaint appears to contain a typo, providing the date of this treatment as "May 10, 2023" instead of June 10, 2023); Doc. 18-1 at 27, 28.
[42]  Doc. 18-1 at 28.
[43]  *Id.* at 28-29.
[44]  *Id.* at 30.
[45]  Doc. 18 ¶ 14; Doc. 18-1 at 31-34.
[46]  Doc. 18-1 at 31-32.
[47]  Doc. 18 ¶ 15.
[48]  *Id.*
[49]  *Id.*

Cooper sues Dr. Prince and PA Abel, alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[50] He seeks compensatory damages as well as court fees.[51]  Defendants move to dismiss Cooper's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[52]  That motion is fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[53]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[54]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[55]

---

[50]  *Id.* ¶¶ 35, 37.
[51]  *Id.* ¶ 37.
[52]  *See generally* Doc. 28.
[53]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[54]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[55]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[56]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[57]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[58]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[59]  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[60]

Because Cooper proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[61]  This is particularly true when the *pro se* litigant, like Cooper, is incarcerated.[62]

## III.    DISCUSSION

Defendants challenge the sufficiency of Cooper's Eighth Amendment medical indifference claims, arguing that his allegations do not rise to the level of a

---

[56]    *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[57]    *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[58]    *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[59]    *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[60]    *Iqbal*, 556 U.S. at 681.

[61]    *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

[62]    *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

constitutional infringement. The Court agrees that Cooper's allegations—at most—implicate professional negligence rather than an Eighth Amendment violation and therefore will grant Defendants' motion to dismiss.

### A.    Eighth Amendment Medical Indifference Claim

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[63] To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[64] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[65]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of

---

[63] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[64] *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

[65] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

injury.[66]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[67]  Claims sounding in mere medical negligence will not suffice.[68]

Cooper adequately states a serious medical need with respect to his acute anemia and the complications he experienced.  He does not, however, plausibly allege that either Dr. Prince or PA Abel acted with deliberate indifference to that need.

Cooper's briefing on the instant motion to dismiss and his actual pleadings tell completely different stories.  In his briefing, Cooper argues that he was ignored by Defendants for "nearly three months" even though he repeatedly "represented to both [D]efendants" his medical concerns via "written letters" and during "sick-call sessions."[69]  These assertions are directly contradicted by Cooper's verified amended complaint and the attached medical records.

According to Cooper's pleadings, PA Abel treated Cooper on just two occasions during the time relevant to this lawsuit.  On both days (May 18 and June 4), Cooper expressed concerns about shortness of breath, and on May 18, he also mentioned that he had "dark hard stools."  During both visits, PA Abel examined

---

[66]  *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).

[67]  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

[68]  *Rouse*, 182 F.3d at 197.

[69]  Doc. 30 at 1, 6.

Cooper and provided him with medical care and prescription medication to address Cooper's symptoms. According to the medical records, he also ordered Cooper to be kept under 23-hour observation in the infirmary following the June 4 exam.

Dr. Prince treated Cooper for the first time on June 5, 2023. During this exam, he noted that Cooper had only been using Alvesco once daily, as well as Albuterol three to four times daily. Dr. Prince reinforced the use of Alvesco two times a day and noted that he was considering changing Cooper to a new "triple therapy" treatment for his COPD. Dr. Prince declined to refer Cooper to a pulmonologist at that time, noting that he was scheduled to see a different specialist later that same afternoon. He next saw Cooper five days later. During that June 10 examination, he determined that Cooper's worsening symptoms required outside medical attention and transferred him via ambulance to Geisinger Hospital's emergency department.

Thus, PA Abel's at-issue treatment of Cooper spanned approximately two and a half weeks, and Dr. Prince's treatment spanned just five days—not three months, as Cooper repeatedly argues in his briefing. During this brief period of time, each provider saw Cooper on only two occasions. Moreover, as part of those examinations, PA Abel and Dr. Prince considered Cooper's symptoms and medical history and provided the care and prescription medications they determined to be medically appropriate.

Cooper's attempt to impute to Defendants his other treatment by (or communication to) CRNP DeBoer, RN Chackan, or any other SCI Dallas medical provider[70] is improper in Section 1983 litigation.  That is because there is no *respondeat superior* liability under Section 1983; rather, "a plaintiff must aver facts to show the defendants' *personal involvement* in the alleged misconduct."[71] Thus, Dr. Prince and PA Abel are only responsible for their personal conduct in treating Cooper; they are not vicariously liable for the actions of other SCI Dallas medical providers.

When considering Dr. Prince's and PA Abel's brief treatment as alleged by Cooper, nothing in the amended complaint implicates deliberate indifference by either Defendant.  At no time was Cooper denied care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denied prescribed medical treatment, or denied a reasonable request for treatment.

Rather, Cooper's amended complaint and attached medical records plainly demonstrate that—during the time in question—Cooper was receiving *extensive* medical care while incarcerated at SCI Dallas, including immediate medical attention following sick calls, treatment by numerous SCI Dallas medical providers

---

[70] *See, e.g.*, Doc. 18 ¶ 27 (alleging, in conclusory fashion, that Dr. Prince is a "doctor and director of medical" who "oversees and makes the final decisions regarding treatment and care for prisoners," and that all subordinates inform Dr. Prince of "serious medical problems of prisoners"); Doc. 30 at 1, 2, 4, 6.

[71] *Dooley*, 957 F.3d at 374 (citation omitted) (emphasis added).

(*e.g.*, nurses, nurse practitioners, a physician assistant, and an in-house doctor), treatment by two outside specialist physicians (an oncologist and a cardiothoracic surgeon) for lung cancer, outside testing for his multiple medical problems, and eventually emergency transfer to an outside hospital. Cooper's claim that the care he received was the equivalent of "no" treatment[72] is eviscerated by his own amended complaint and attached medical records.

While it is clear that Cooper believes that Dr. Prince and PA Abel failed to properly treat his symptoms (*i.e.*, by treating him for COPD and lung cancer rather than testing and treating him for acute anemia), such an allegation only implicates professional negligence, not a constitutional violation.[73] Indeed, treating a patient experiencing shortness of breath who has a known history of COPD and lung cancer for those precise respiratory illnesses does not appear to be an unreasonable course of action. Cooper's claim that Defendants' chosen course of treatment was somehow inappropriate or deficient is a quintessential example of a disagreement with a medical provider's professional judgment or treatment plan, which simply does not rise to the level of a constitutional violation.[74]

---

[72] Doc. 18 ¶ 22.

[73] *See Estelle v. Gamble*, 429 U.S. 96, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

[74] *See Lanzaro*, 834 F.2d at 346 (explaining that "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation"); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("Because 'mere disagreement as to the proper medical treatment' does not 'support a claim of an eighth amendment violation,' when

Cooper also repeatedly argues that because Dr. Prince and PA Abel knew he had a history of anemia, their chosen course of treatment exhibited deliberate indifference to that serious medical need.[75]  Once again, however, such an argument merely implicates medical malpractice.  That is, Cooper is contending that because Defendants had previously treated Cooper for anemia in 2021 and 2022 or observed it in his medical history, they *should have known* that Cooper's symptoms were anemia-related.  This type of allegation is a classic assertion of negligence.

Cooper has not alleged, nor can he allege, that either Dr. Prince or PA Abel was aware that Cooper was suffering from acute anemia in late May and early June 2023 and simply refused to treat that condition.  Indeed, by Cooper's own admission, he did not discover that his symptoms (shortness of breath and fatigue upon exertion) were caused by anemia until he was admitted to Geisinger Hospital and staff performed testing and determined that his hemoglobin was 2.6.[76]

Thus, his claim that Dr. Prince and PA Abel "deliberately disregarded the condition" *i.e.*, anemia,[77] is a gross mischaracterization of the Eighth Amendment

---

medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." (internal citation omitted)); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

[75]  *See* Doc. 18 ¶¶ 8-10, 30; Doc. 30 at 4.

[76]  *See* Doc. 18 ¶ 15.

[77]  *See id.* ¶¶ 30-31, 34; Doc. 30 at 4, 8-9.

deliberate indifference standard for medical care. Under Cooper's errant reasoning, Dr. Prince and PA Abel would have been "deliberately indifferent" to Cooper's serious medical needs if they had failed to treat Cooper for any one of his many serious, previously diagnosed medical conditions and it turned out that such prior condition was the root cause of his respiratory problems in May and June. That previous medical history includes, but is not limited to, chronic embolism, deep vein thrombosis, hyperlipidemia, hypertension, peripheral vascular disease, pulmonary embolism, COPD, coronary artery disease, hematuria, dyspepsia, hiatal hernia, edema, and lung cancer.[78] That is simply not the standard by which prison medical providers are measured in Eighth Amendment medical indifference claims.

Cooper's amended complaint, therefore, is woefully deficient as to plausibly alleging that either Dr. Prince or PA Abel was culpable of "unnecessary and wanton infliction of pain" in their brief treatment of him. His allegations—at most—implicate a claim of professional negligence, not an Eighth Amendment violation. The Court, therefore, will dismiss Cooper's amended complaint for failure to state a claim upon which relief may be granted.

---

[78] *See* Doc. 18-1 at 8, 30.

### B.    Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[79]  Further leave to amend will be denied because Cooper has failed to cure the fatal deficiencies with his pleadings even after "amendments previously allowed."[80]  Both Cooper's complaint and amended complaint reflect that he is unable to plausibly allege an Eighth Amendment medical indifference claim against either Defendant.

## IV.    CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Cooper's amended complaint will be dismissed with prejudice.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[79]  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

[80]  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").